·ISAAC DYER, impleaded, etc.

*v.*

JOHN LAST, Administrator of the Estate of
RICHARD F. FLINT.

1. JUDICIAL NOTICE—*as to who are the officers of a court.* The circuit courts in this State will take judicial notice of who are their officers, as, for instance, the clerk.

2. So, where the jurat attached to an affidavit of non-residence was signed in the name of a person, by another, as deputy, without any designation of the official character of the principal or of the deputy, the court in which the proceeding is pending may take judicial notice that the person whose name was signed to the jurat was the clerk of that court.

3. And upon such case being brought to the appellate court, it appearing from the record that the same person whose name was signed to the jurat, without any official designation, had issued the summons in the case as clerk, and had also signed the notice of publication in the same capacity, this court, upon an objection being made that the jurat to the affidavit was not signed by an officer, will presume that the court below took judicial notice of the official character of such person.

4. This case differs from the case of *McDermaid* v. *Russell*, 41 Ill. 489, in the fact, that the record discloses that the affidavit was sworn to before an officer of the court. In that case, so far as the record disclosed, the affidavit was not sworn to before *any* officer.

5. PRACTICE—*of filing papers in a cause after continuance.* It is no objection that a paper was filed in a cause at the term at which the cause was continued, and after the continuance was allowed. Under the rules of practice, a party may file papers in a cause at any and all times, whether in term time or in vacation.

WRIT OF ERROR to the Circuit Court of Tazewell county; the Hon. JAMES HARRIOT, Judge, presiding.

The opinion states the case.

Messrs. ROBERTS & GREEN, for the plaintiff in error.

Mr. C. B. HOSMER, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a suit in chancery, instituted in the court below in July, 1863, by the intestate of defendant in error, against plaintiff in error, who was then, and now is, a non-resident of this State. Publication was made under the 8th section of the chancery act. An affidavit of non-residence was filed in proper form, signed by complainant, to which was attached this jurat: "Sworn to and subscribed before me, this 24th day of July, 1863, Geo. H. Harlow, per A. P. Griswold, deputy." A subpœna in chancery was issued on that date, returnable on the first day of the next September term, but was returned, not found. The term of the circuit court commenced on the first Monday in September following. From a certificate of publication which was filed, it appeared that the notice was published for four successive weeks, the first insertion being on the 28th day of August, and the last on the 18th day of September. Publication not having been made in time, the cause was continued on the 7th day of September, but on the 22d, the certificate of publication was filed, and also written authority to Cohrs to enter the appearance of Thompson was filed.

At the next February term the appearance of Thompson was entered, and the bill taken as confessed as to him. A rule was entered upon plaintiff in error for an answer, and a guardian *ad litem* was appointed for the minor defendant. The guardian *ad litem* answered, but plaintiff in error was defaulted, and the bill was taken as confessed as to him, and the cause was referred to the master to hear the proofs and report. This reference was set aside, and the bill was amended and Gill and Flint made parties, who entered their appearance, and the bill was taken as confessed as to them, and the case was again referred to the master at the same term.

On the coming in of the master's report, at that term, a hearing was had on the bill, answer, *pro confesso* orders, master's report and proofs, and the relief asked was granted.

The record is brought to this court on error, and a reversal is asked on several grounds which we shall proceed to examine.

It is first urged, as a ground for reversal, that the affidavit upon which publication was ordered was insufficient, as it does not appear that it was sworn to before a proper, or, in fact, any officer authorized to administer the oath. The signature of Harlow is not followed by the word " clerk," or any other means of designating the official capacity in which he acted by his deputy, nor does it appear of what office the latter was deputy, and hence it is claimed the affidavit is not sufficient to support the order. The case of *McDermaid* v. *Russell*, 41 Ill. 489, is referred to as supporting that position. In that case it was held, that where the affidavit upon which the notice of publication was based was not sworn to before any officer, no authority was conferred upon the court to make the order of publication. If, in the case at bar, the affidavit was not sworn to before any officer, then that case is conclusive of this.

The record, however, shows a person of the same name signed the notice for publication and the summons that was issued, as circuit clerk. Hence, we may reasonably and fairly conclude that the court below knew and took judicial notice that Harlow was clerk of the court, and that the affidavit was signed and sworn to before him. All courts have the right, and it is their duty, to take notice of the persons who are their officers; and the court below might well find that Harlow, before whom the affidavit of non-residence was sworn to, was the clerk of that court, and, if so, then it was amply sufficient. Thus it will be observed that the two cases are not alike, in that, the affidavit was not sworn to before any officer, so far as the record disclosed, while in this, the summons and other papers, and file marks, show that Harlow was clerk, and we must presume the court below took judicial notice of the fact.

It is again urged, that after the cause was continued at the September term, it was error to permit any further proceedings to be had at that term. All that was done was to file a paper with the clerk, which was minuted on the record,

authorizing an attorney of the court to enter the appearance of a defendant in the cause, and to file the certificate of publication. We fail to appreciate any force in this objection. We have always understood the practice as authorizing a party to file papers in the cause at any and all times, whether during the term or in vacation. Under the practice, there are no specified days or times set apart within which papers can alone be filed. Nor do the counsel for plaintiff in error refer us to any rule of practice which prohibits it, nor have they shown, or attempted to show, that the slightest injury has resulted, or could have resulted, to plaintiff in error, nor can we see that he has suffered the least wrong from filing these papers, as no action was taken upon them until the next term.

The next error assigned is the approval of the master's report. After a careful examination we fail to perceive any error in that order. By the agreement entered into between the parties, Dyer was to receive the price of his land warrants, interest, taxes, etc., paid by him. The master found that the land had cost both parties, including land warrants, cost of location, taxes paid by both parties, and the expenses incurred by Flint in entering the lands, with interest on the several sums to the time of the reference, $3,508.54. This he found from the charges in the bill admitted by the decree *pro confesso*, and the evidence of Thompson Flint. Of this sum, deceased seems to have paid out, in expenses in entering the land, $328.74, and taxes on the land, $284.15, which, with interest, would amount to about $900. But we are unable to discover how the master found the means of allowing Flint a credit of $1,858.09, unless it was by giving him one-half of what he denominates profits, which we presume he did. He charged Dyer with half of the money remaining after refunding principal and interest advanced by Dyer, with interest to the time of trial. By computation, it will be found that the money advanced by Flint, with interest, and half of the sum, with interest, received of Gill after paying Dyer, will make the sum of $1,858.09.

From this report it is seen that Dyer received not only the money that was due him under the agreement on the sale to Gill, but received a sum, with interest, which belonged to Flint, which, at the trial below, amounted to $1,858.09. This left Dyer the debtor of Flint, and as Gill had forfeited the lands, it left the lands on hand. And whatever the master may have reported in reference to Dyer being chargeable with $5,000, including the sum credited to Flint, which is, no doubt, the money received from Gill, with interest, still he finds, and we think properly, that Dyer owed Flint the $1,858.09 to be taken from the proceeds of sales, and that they owned the lands in common. This being the state of the accounts between the parties, it was proper that the lands should be sold, and that Flint should have his money, which Dyer owed him, and his half of the proceeds of the land when it should be sold ; and the court did right in requiring the fund arising from the sale to be divided into two equal parts as the portion each should have from the lands, but as to Dyer and Flint, it was proper that the court should deduct that amount from Dyer's share, and pay it to Flint's representatives. Plaintiff in error having failed to show any error in the statement of the account by the master, and we being unable to perceive any, the decree should not be disturbed on the master's report.

After a careful examination of the record we fail to find any error, and the decree must, therefore, be affirmed.

*Decree affirmed.*